Berry v. Louisville & N. R. R. Co.

CASE 105—ACTION FOR PERSONAL INJURIES—FEB. 5.

# Berry v. Louisville & N. R. R. Co.

109  727
f135  480

APPEAL FROM HENDERSON CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.    AFFIRMED.

CARRIERS—DUTY TO PERSON ASSISTING PASSENGER—NOTICE OF INTENTION TO LEAVE TRAIN—FAILURE TO GIVE NOTICE OF STARTING TRAIN —INJURY IN ALIGHTING FROM MOVING TRAIN.

Held:    1. Where plaintiff went into a car for the purpose of seating his wife and children, the carrier, having neither actual nor constructive notice that plaintiff intended to get off before the train started, did not owe him any duty to give him notice before starting the train or to hold the train beyond the schedule time for departure, and it is, therefore, not liable for an injury to plaintiff resulting from his act in attempting to alight from the train after it was in motion.

2. A conversation between plaintiff and his wife at the entrance to the car, and not far from the conductor, was not admissible to show notice to the conductor of plaintiff's intention to leave the train before it started, in the absence of anything to show that the conductor heard the conversation, it being no part of his duty to listen to such conversations.

3. The fact that the platform was not sufficiently lighted furnishes no ground of recovery, that not being the proximate cause of the injury.

4. Plaintiff can not complain that the conductor failed to admonish him not to get off, as he was an experienced traveler; and, besides, the conductor did not know of his purpose to get off until he was in the act of doing so, and then exclaimed: "Steady! Be careful."

MONTGOMERY MERRITT AND CLAY & CLAY, FOR APPELLANT.

The appellant went aboard the train of appellee at Henderson with his wife, two small children and aged mother-in-law, having previously engaged sleeping berths for them.

1. At the time he put them on the cars the conductor was standing close to the steps on the platform. Mrs. Berry asked Mr. Berry not to get aboard. If the conductor heard this request, then he knew that Mr. Berry, the plaintiff, was only going to see his family aboard the train and then get off, and it was then his duty to hold the train until Berry could have a reasonable opportunity to get off.

2. It was not *per se* negligence in Berry to get off the train after it had started. That was a matter for the jury.

3. It was the duty of the railroad company to keep its platform properly lighted. If it had been properly lighted Berry thinks he would not have been hurt.

4. The conductor had notice that Berry was going to get off and cautioned him to be careful, but gave him no assistance, and his failure to assist him was negligence.

AUTHORITIES CITED.

12 A. S. R., 443; 18 S. W. R., 545 and 224; 27 S. W. R., 905; 29 A. S. R., 49; 45 S. W. R., 530; 4 A. S. R., 235; 29 S. W. R., 68; 11 S. W. R., 465; 93 Ky., 119; Smith on Negligence, 392; Sherman & Redfield on Negligence, sec. 492 and 506-8; Jaggard on Torts, p. 1087 and notes.

ADDITIONAL BRIEF.

A person going aboard of a train to assist some one is not required to notify in express terms, the employes of the road, of his intention to get off. If they have knowledge or notice of that fact from any source it is sufficient. Shearman & Redfield on Negligence (5th ed.), sec. 492; 55 S. W. R., 185; 5 A. & E. Ency.; 670; 47 S. W. R., 42.

YEAMAN & YEAMAN, FOR APPELLEE. (LOCKETT & LOCKETT OF COUNSEL.)

POINTS DISCUSSED AND AUTHORITIES CITED.

1. One who enters a train, as did appellant, simply as an escort to his family, while not a trespasser, yet is not a passenger, but

only a licensee, and those in charge of the train do not owe to him the duty they owe to a passenger, but owe him only ordinary care. Elliott on Railroads, sec. 1578; Lucas v. R. R. Co., 6 Gray (Mass.), 67; Texas, &c., R. R. Co. v. McGilvany, 29 S. W., 68; Railway Co. v. Miller, 27 S. W., 905; Doss v. Missouri, &c., R. R. Co., 21 Am. Rep., 371; Dillingham v. Pierce, 31 S. W., 204.

2. The law charges such licensee with knowledge of the advertised time of arrival and departure of the train. Railway Co. v. Miller, 27 S. W., 905; Doss v. Missouri, &c., R. R. Co., 21 Am. Rep., 376; Dillingham v. Pierce, 31 S. W., 204.

3. The Crunk case discussed. L. & N. R. R. v. Crunk, 119 Ind., 54, reported also in 12 Am. St. Rep., 443.

4. One merely escorting a passenger can claim no legal right to enter a car where those in charge of the train are ready and offering to render all needed assistance. Little Rock, &c., v. Lawton, 15 L. R. A., 435; Yarnell v. Kansas City, &c., R. R. Co., 18 L. R. A., 601.

5. The absence of light at the station was not the proximate cause of appellant's injury; the cause was his attempt to leave the train while it was in motion, and getting off at a place 130 feet from the point provided for passengers to alight. Elliott on Railroads, sec. 1256; Shields v. R. R. Co., 97 Ky., 105; Missouri v. Miller, 27 S. W., 906; L. & N. R. R. v. Ricketts, 27 S. W., 860.

6. Appellant can not claim that the presence of the porter in the aisle obstructed his exit; the same claim discussed in Lawton v. R. R. Co., 18 S. W., 544.

7. The appellant's effort to leave an express train, while it was in motion, in the dark, at a point 130 feet from the place provided for persons to enter and leave the cars, was such contributory negligence as precludes recovery. Similar facts discussed in Adams' Admr. v. R. R. Co., 82 Ky., 603; Durham v. R. R. Co., 16 Ky. Law Rep., 757; Watson v. R. R. Co., 7 So. E., 854; East Tenn, &c., R. R. Co. v. Holmes, 12 So. Rep., 296.

8. There is no proof of neglect on the part of appellee, but had there been, the reckless negligence of appellant contributed to and caused the accident and precludes recovery. Ky. Central, &c., v. Dills, 4 Bush, 593.

9. Where contributory negligence is shown by the plaintiff's own evidence, the defendant is entitled to a peremptory instruction. Whittaker's Smith on Negligence, 485; Central, &c., R. R. Co. v. Letcher, 69 Ala., 106; R. R. Co. v. Lee, 97 Ala., 325; 12 S. Rep., 48.

10. Under the facts disclosed by appellant's own evidence he would not have been entitled to recover had he in all respects been

a passenger, and the appellee had been under all obligations to him that it is under to a passenger. R. R. Co. v. Lee, 97 Ala., 325, 12 S. Rep., 48; Burrows v. Erie Ry., 63 N. Y., 556; Wood on Rys., vol. 2, p. 1298.

EDWARD W. HINES, FOR APPELLEE.

1. There is neither allegation nor proof in this case that plaintiff rendered any assistance to his wife and children his mother-in-law, or that his assistance was needed; therefore, he was only a licensee and the company owed him no duty except to refrain from wanton or wilful injury to him.
2. But even though defendant was negligent, plaintiff was guilty of such contributory negligence that he can not recover.

CITATIONS.

Little Rock, &c., R. R. Co. v. Lawton, 15 L. R. A., 434; Yarnell v. Kansas City, &c., R. Co., 18 L. R. A., 602; Greswold v. Chicago, &c., R. Co., 64 Wis., 652; Coleman v. Georgia R. & Bkg. Co., 84 Ga., 1; Durham v. L. & N. R. R., 16 Ky. Law Rep., 757.

OPINION OF THE COURT BY JUDGE BURNAM—AFFIRMING.

This was an action to recover damages for personal injuries sustained by appellant at Henderson, Ky., while leaving the car of appellee into which he had gone for the purpose of bidding his mother-in-law, wife and two small children good-by upon their departure for Florida. The facts relied on in his petition to show negligence are that the employes of defendant in charge of the train knew that he did not intend to take passage thereon, but was going to get off as soon as he had seen the ladies seated; that the train did not stop long enough for him to alight in safety; that the platform in front of the depot was not properly lighted; that no notice was given before the train started; and that the conductor thereof saw him as he was about to get off, and did not admonish or warn him of the danger of attempting to do so. Appellant testified, in substance, that he went to the depot to put his

wife, mother-in-law and two small children on the limited
express for Florida; that the train stopped so as to bring
the entrance to the sleeping car immediately in front of
the door leading to the ladies' room at the depot; that he
did not intend to accompany them; that tickets and sleep-
ing berths had been previously engaged for those of the
party who intended to leave; that when they arrived at
the car entrance they found the conductor and sleeping-
car porter standing upon the platform near the steps of
the car; that the porter took the hand packages and par-
cels, and entered the car first; that he was followed by
his mother-in-law, then the two children, then his wife;
after her came appellant, and after him came the 14-year-
old son, who did not intend to leave on the train; that
just before entering the car his wife requested him not
to go on board, and that the conductor was standing
close enough to have heard the remark of Mrs. Berry,
but that he disregarded her request, and went on the car
for the purpose of seeing her and the children seated;
that after he had gotten on the inside of the car the train
started, and that he hastily kissed his wife good-by, and
started out, preceded by his 14-year-old son; that when
he was out on the platform he saw a man in uniform,
whom he took to be the sleeping-car conductor, and that
he hastily descended the steps for the purpose of alight-
ing, holding on to the rail with one hand; that it was
so dark that he could not see the platform, and that he
thought he would feel for the platform with his foot,
and in attempting to do so it was thrust under him; and
that about this time he heard the conductor call out,
"Steady! Be careful;" and that a thought occurred to
him that he would be struck by something, and that he
gave himself a turn and let loose, and that in doing so he

was drawn under the car; that he was a drummer by profession, and accustomed to railroad travel. The witness Broadwell testified that, while the platform was not brilliantly illuminated, there was no difficulty in a person seeing where to put his foot in getting off, if he was careful. The witness Kriel testifies that the train remained standing about the usual time, and that the place where plaintiff alighted was about 125 or 130 feet from the place where it was standing when he boarded the train. Upon the conclusion of appellant's testimony, the circuit judge, at the instance of appellee, instructed the jury to find for the defendant; and this is an appeal from the judgment rendered pursuant to the verdict so directed.

The first question arising upon the appeal is the duty which appellee owed to appellant under the facts. It is perfectly clear that there was no necessity for appellant to have entered the coach at all. The train arrived on time, the conductor and porter were in their usual places to render all needed assistance; tickets and berths had been previously engaged, and the wife, children and mother-in-law of appellant had entered the coach in safety. The only reason for his doing so was to bid his wife and children farewell, which might as well have been accomplished on the platform as in the car. Appellant had taken passage on the train for his wife and children, because he knew that it was a limited express, which made few stops, and traveled at a high rate of speed, thus shortening the time spent on the train between the starting point and the point of their destination. He was an experienced traveler, and knew the absolute importance of promptness in departure of that train in particular. Mr. Elliot, in his work on Railroads (section 1578), in discussing the duty of railroad companies to persons injured

under similar circumstances, says: "The extraordinary duty of a carrier to a passenger is not, as a general rule, owed to such a person, although we have no doubt that the railroad company owes to him the duty of exercising ordinary or reasonable care. There may possibly be cases where a person assists a passenger on a train—as, for instance, where the passenger is ill, feeble, too young to care for himself, or the like—where it is proper to hold that the person rendering such assistance is a passenger; but, where there is no necessity for rendering it, the person giving it can not be regarded as a passenger." In the case of Railroad Co. v. Crunk, 119 Ind., 542, (21 N. E., 31), it was held "that, if the company sells a ticket to an invalid, who is unable to assist himself, the carrier takes upon itself the obligation of allowing him assistants to place him on the train, and seating him in the car; and the compensation paid for the ticket includes such right, and the company will owe the same obligation to his assistants while necessarily entering and leaving the car which it owes to him." In that case the passenger was a sick man, who had to be carried on board the train by Crunk and others, and those in charge of the train knew of the fact, and promised to hold the train until Crunk and the others, who were assisting him, could leave the train. None of those in charge of the train offered to assist in putting the sick passenger on board. Crunk, without loss of time, after putting the sick man on board, was leaving the train after it had started, and while in the act of stepping off the motion of the car was suddenly and greatly accelerated, which caused his injury. Another case, which holds the very opposite of the view that Berry was to be considered a passenger, is Railway Co. v. Mc-Gilvary (Tex. Civ. App.) 29 S. W., 68. In that case Mc-

Gilvary accompanied his sister and several small children to the station, where she and the children were to take passage. He assisted them onto the train, and entered the train. The train started before he got off, and he was injured in alighting therefrom. The court said the plaintiff did not stand in the same relation to the company as a passenger, and therefore the liability of the company could not be measured by the standard of duty to passengers. While the plaintiff was not a trespasser, and the company was under obligation not to negligently injure him, yet whether or not the company was negligent must depend upon the knowledge the employes had of plaintiff's intention to immediately get off of the train. And quotes with approval the case of Railway Co. v. Miller (Tex. Civ. App.) 27 S. W., 905, as follows: "The relations sustained between the railroad company and appellee did not arise out of contract, and the obligations are not such as are imposed by contract. Appellee did not go into the train as a passenger, and hence the duties imposed by law upon carriers to passengers did not rest upon the company, and govern its conduct towards him. He went upon the train upon an implied permission or license, and the company owed him the duty of ordinary care." In Doss v. Railroad Co., 21 Am. Rep., 321, the facts of which are similar to those of the case at bar, the court said: "It is clear that the same degree of care on the part of the railroad company exacted by law in regard to passengers is not required of them in regard to persons who are not passengers. In the latter case nothing more is required than ordinary diligence. . . . Not being a passenger, no extraordinary care was required." In the case of Railway Co. v. Lawton (Ark.) 18 S. W., 543, (15 L. R. A., 434), where the facts were very similar to those

in the case at bar, the court held "that such a person is entitled to demand ordinary care for his protection, and would be entitled to recover for an injury caused by its omission; but he could not recover unless he established that his injury was caused by some neglect or omission on the part of the railroad company." In Griswold v. Railway Co., 64 Wis., 652, (26 N. W., 101), in which case the plaintiff had gone to the train to meet his wife, went upon the car, and, not finding her, attempted to return to the ground, when he was injured by the sudden starting of the train, the court said that the duty of the company to a person in this situation was not absolute; that he was not a passenger, and the company owed him no duty as such; but that, if the servants of the company had been informed, or had any reason to believe, that he had gone upon the train for the purpose stated, then the company would have owed him the duty of delaying the train a reasonable time to permit him to get off; but, since it did not appear that any one was informed of his purpose, he was held not entitled to recover. And the law was ruled the same in Coleman v. Railroad Co., 84 Ga., 1, (10 S. E., 498); Packet Co. v. Henry, 50 Ill., 268. From these and numerous decisions bearing upon this question, we think it is clear that, if appellee had either actual or constructive notice that appellant had gone into the car for the purpose of seating his wife and children, and that he intended to get off before the train started, it was their duty to have given him notice before starting the train, and to have held it long enough for him to get off with safety; but, in the absence of such notice, no obligation existed on their part. It is no part of the duty of a conductor to listen to the conversation of persons about to take passage on his train, or to take notice of what they

say. In fact, it was practically impossible to do so under the circumstances developed by the proof in this case. This was a fast train. It arrived at the station in the night and only remained long enough to enable passengers to get off and on. A person boarding a train under these circumstances without the knowledge or request of the company is bound to know the time of the departure of such train, if such time be fixed and reasonable, public notice being given thereof, and to leave the train in season before the time so fixed as would enable him to get off with safety before the cars are set in motion. With the arrival of the time fixed for the departure of the cars the implied license or permission ceased, and with it the liability of the company. See Doss v. Railroad Co., 21 Am. Rep., 376.

Appellant complains that the platform was not sufficiently lighted. It is apparent that appellant's injury was not due to such darkness, but to his own negligence in attempting to alight from a moving train after it had acquired very considerable speed. And the fact that it was dark at the point where appellant attempted to alight makes more evident his own negligence in attempting to do so. And the law is well settled, unless the alleged negligence of appellee was the proximate cause of the injury of which appellant complains, there can be no recovery. See Shield v. Railroad Co., 97 Ky., 103, (29 S. W., 978).

Appellant also complains that the conductor failed to admonish him not to get off. There is no complaint that he directed, or advised, or persuaded him to attempt to do so, or that the conductor knew of his purpose to get off until he was just in the act of doing so; and, as a matter of fact, he testifies that the conductor exclaimed, "Steady!

Be careful,"—clearly words of warning. Appellant was an experienced traveler, and as capable of appreciating the danger of attempting to alight under the circumstances as the conductor. After a careful consideration of the case, we are of the opinion that no duty imposed by law upon the appellee to appellant was neglected, and that the peremptory instruction was properly given. Judgment affirmed.