## TEXAS & P. RY. CO. v. BOYD. †

(Court of Civil Appeals of Texas. Ft. Worth. Oct. 28, 1911. Rehearing Denied Dec. 2, 1911.)

1. CARRIERS (§ 318*)—INJURY TO PASSENGERS —ACTS OF BRAKEMAN—SCOPE OF AUTHORITY.

Where the conductor of a train testified that a brakeman was stationed at the place where plaintiff claimed he boarded the train, whose duty it was to assist passengers on and off, and when everything was "all right" to give the signal to the conductor, who would in turn signal the engineer, and the brakeman testified that he was between the two coaches and assisted people on and off the train, that the conductor depended on the brakeman and chair car porter to know that everything was ready to go, such proof was sufficient to show that the brakeman's act in shutting the vestibule door of a car while plaintiff was on the lower step, thus preventing his return to the car, was within the scope of his employment.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1307; Dec. Dig. § 318.*]

2. CARRIERS (§ 282*) — TRANSPORTATION OF PASSENGERS—NEGLIGENCE.

Where a brakeman, knowing that plaintiff, an officer, had entered the train to look for certain criminals, and that plaintiff was standing on the lower step of a coach, shut the vestibule door against plaintiff, preventing his reentry into the coach and leaving him in a perilous position, so that it was necessary for him to jump from the train, the railroad company was negligent, whether plaintiff was a trespasser or a passenger.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1107; Dec. Dig. § 282.*]

3. CARRIERS (§ 314*)—NEGLIGENCE OF SERVANT—SCOPE OF AUTHORITY—PLEADING.

Where a complaint against a carrier for injuries to plaintiff alleged that the vestibule door was closed on him, so that he was compelled to jump from the car after the train started, by one of defendant's employés in

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

charge of the train, such allegation was tantamount to an averment that the employé was acting within the scope of the duties imposed on him by defendant.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1273, 1275½; Dec. Dig. § 314.*]

**4. APPEAL AND ERROR (§ 1064*)—INSTRUCTIONS—PREJUDICE.**

That an instruction given for defendant assumed a fact in dispute was not prejudicial to the latter, when it did not, in any event, warrant a verdict for plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4221; Dec. Dig. § 1064.*]

**5. TRIAL (§ 240*)—INSTRUCTIONS—ARGUMENTATIVENESS.**

An instruction that plaintiff was bound, in leaving defendant's train, to take proper care to prevent injury, and could not recover if, in leaping from the train, he acted recklessly, and thereby contributed to his own injury, and that when plaintiff found the cars in motion it was his right to demand that defendant's officers stop the train, and if he had been carried beyond his home he could have recovered compensation for returning and all damages that he may have sustained on account thereof, but he had no right to endanger his life or limbs by jumping from the cars, in order to prevent being carried from his home, when he found the cars in motion, and if he did so jump, and the injuries complained of were the result thereof, you will find for defendant, was properly refused as argumentative.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 561; Dec. Dig. § 240.*]

**6. CARRIERS (§ 338*) — INJURIES — PERILOUS POSITION—CONTRIBUTORY NEGLIGENCE.**

Where defendant carrier wrongfully and negligently placed plaintiff in a perilous position by shutting the vestibule door, so that he could not return to the coach, and plaintiff, under the influence of sudden fright by reason thereof, jumped from the train, and was injured, defendant could not defeat recovery for the injuries sustained, on the theory that plaintiff was negligent.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1352; Dec. Dig. § 338.*]

**7. TRIAL (§ 260*)—REQUESTED CHARGE—INSTRUCTION GIVEN.**

Where the court charged that, if plaintiff boarded defendant's train to look for suspected burglars, and at the time he got off the train was moving so rapidly as to make it dangerous for plaintiff to alight, and at the time he jumped from the train he knew it was moving at a dangerous rate of speed, then he could not recover, such instruction sufficiently presented the defense of contributory negligence, ant authorized a refusal of a requested charge on such issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

Appeal from District Court, Palo Pinto County; U. J. Oxford, Judge.

Action by M. F. Boyd against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

H. C. Shropshire and W. L. Hall, for appellant. W. P. Gibbs and Stephens & Miller, for appellee.

DUNKLIN, J. M. F. Boyd sued the Texas & Pacific Railway Company for damages resulting from personal injuries sustained by him, and from a judgment in his favor the defendant has appealed.

Plaintiff was marshal of the town of Gordon, and on the night of his injury he, together with A. M. Barrett, the mayor of the town, went to defendant's station in the town of Gordon, intending to go to the town of Santo on defendant's train to search for persons suspected of burglarizing a house in Gordon a short time prior thereto. For the purpose of the intended trip, Barrett purchased from defendant's station agent passenger tickets for himself and plaintiff. Brawner Caudill, deputy town marshal, who was also searching for the suspected burglars, came into Gordon upon the train which plaintiff and Barrett intended to take for Santo, and told them that there were two men on the train whom he thought were the guilty parties. Plaintiff, Barrett, and Caudill then boarded the train, but immediately left it after an unsuccessful search for the suspects, and after being informed that those persons had left the train at that station. Barrett and Caudill got off the train ahead of plaintiff, and after the train had started from the station, and while it was in motion, plaintiff followed them, and by reason of the momentum of the train when he alighted he came in violent contact with the ground, and was thereby injured.

The foregoing facts were alleged in plaintiff's petition, and were established by the evidence. The petition contained further allegations substantially as follows: That when he entered the train plaintiff informed the agents in charge thereof of his purpose to search for the suspected burglars, and requested that the train be held until the search could be made; that when he started to get off the train the agents in charge of it directed him to alight from the steps at the south entrance to the vestibule, between the coaches, assuring him that he could do so without danger of injury to himself, notwithstanding plaintiff's statement to them at the time that he was not in the habit of alighting from moving trains; that, in obedience to such command by said agents, he passed to the lower step leading to the vestibule, and, there discovering that the train was moving too fast for him to alight with safety, turned to re-enter, and finding the door to the vestibule closed and no one in sight to open it, with no place to stand, except upon the lower step, which was a position of peril, he fell to the ground, and was injured.

There was evidence to support the allegations last stated, except that the evidence did not show that plaintiff fell from the car, but did tend to show that, by reason of his perilous position on the step and fright occasioned thereby, he jumped to the ground. The evidence further showed that the employé on the platform of the car in ques-

tion was defendant's first brakeman, Clark. Plaintiff further alleged that he was a passenger on the train, and upon the facts alleged in the petition and recited above based a charge of negligence on the part of the defendant as the proximate cause of his injury. The jury were charged substantially that, if they should find that the door to the vestibule was closed behind the plaintiff after he descended to the bottom step, and that thereby he was placed in a perilous position and was forced to alight, and that one of defendant's employés in charge of the train closed said vestibule door, knowing at the time that plaintiff was then on the step, and in so doing was guilty of negligence, then a verdict should be returned in plaintiff's favor; this charge being given, however, subject to a further instruction to return a verdict in defendant's favor if, in alighting, plaintiff was himself guilty of negligence. No other issue of negligence was submitted, and in the charge negligence was defined as a failure to exercise ordinary care.

Upon the contention that the evidence showed appellee to be a trespasser on its train, in that he entered it with no intention to go to Santo, but only to search for the suspects, and did not show that the brakeman in closing the door to the vestibule of the car, and thus forcing appellee to jump to the ground, was acting within the scope of his employment, appellant insists that the court should have instructed a verdict for the defendant.

[1] The conductor of the train at the time testified that he had charge and control of the other employés, who acted under his orders and direction. He further testified that the first brakeman was stationed at the place where plaintiff claimed to have boarded the train, whose duty it was to assist passengers on and off the train, and when everything there was all right to give a signal to that effect to the conductor, who in turn would signal the engineer. G. H. Clark, the first brakeman, testified: "My position on the night in question was between the two coaches, and I assisted people on and off the train. * * * The conductor depends on the brakeman and the chair car porter to know when everything is ready to go." He further testified that he saw plaintiff and his companions get on the train at Gordon. We think this evidence was sufficient to show that the act of the brakeman in closing the door of the vestibule, and thus preventing plaintiff's return from the lower step of the car, was within the scope of the duties of his employment. This conclusion renders it unnecessary for us to decide whether or not plaintiff was a passenger. According to the testimony of plaintiff and his companions, they informed the brakeman at the time they entered the train of their purpose in boarding it. They were officers of the law and in search for persons who had committed a felony; had tickets entitling them

to ride on the train; entered the train for a lawful purpose, and with the knowledge of the brakeman and without his objection. Under such circumstances, plaintiff was not a trespasser, and, if it be said that he was not a passenger, yet appellant owed him the duty to exercise ordinary care to avoid injuring him. Railway v. McGilvary, 29 S. W. 67; Railway v. Miller, 8 Tex. Civ. App. 241, 27 S. W. 905; Berry v. Railway Co., 109 Ky. 727, 60 S. W. 699. See other decisions cited in Oxsher v. H. E. & W. T. Ry., 29 Tex. Civ. App. 420, 67 S. W. 551.

[2] Interpreted in the light of the charge, it appears that the verdict was predicated upon a finding by the jury that the brakeman knowingly closed the vestibule door against plaintiff, thus leaving him in a perilous position and causing him to jump from the train. If the brakeman was acting within the scope of the duties of his employment at the time, this would show such negligence as would render defendant liable, even though it should be held that plaintiff was a trespasser.

[3] Another contention is that the petition contained no allegation that the brakeman was acting within the scope of his employment in committing the acts mentioned. It was alleged that those acts were committed by defendant's employés in charge of the train. We think this was tantamount to an allegation that such employés were acting within the scope of the duties imposed upon them by the defendant. It is insisted further that the charge was erroneous, in that it permitted a recovery upon a cause different from that alleged in the petition; this contention being predicated upon the facts that in the petition plaintiff alleged that he was a passenger, while the charge submitted the duty owing to plaintiff as ordinary care, and not that high degree of care which a carrier owes to a passenger. As noted already, the facts were alleged in the petition, and upon those facts a charge of negligence was predicated. The pleading was sufficiently broad to cover the case submitted to the jury. The fact that it also included a case of liability to plaintiff as a passenger was not inconsistent with the issue submitted, and the charge was not at variance with the petition. It was simply an instance of the petition alleging more than was submitted to the jury, and more than sufficient to warrant the judgment recovered. Nor do we think the charge is subject to the criticism presented, that it was on the weight of the evidence.

[4] The following instruction given by the court is assigned as error: "Moreover, gentlemen, if the plaintiff voluntarily undertook to alight from the defendant's moving train, and was not forced to do so because of the entrance and door of the car being closed upon him, and if in alighting he received the injuries complained of, if you be-

lieve from the evidence in this case that such effort on his part to alight under such circumstances constituted negligence, then he cannot recover." The criticism made is that this instruction assumed, as a fact, that appellee was forced to alight from the train, because the door was closed against him. As the instruction directed a verdict for the defendant upon a finding of certain facts, and did not, in any event, warrant a verdict for plaintiff, we fail to see how it can be said that it was harmful to appellant.

Complaint is made of the court's refusal to give the following special instructions requested by defendant:

Appellant's requested charge No. 2: "In this case you are further charged that plaintiff was bound, in leaving the car of defendant, to take proper care and precaution to prevent injury, and he cannot recover if it appears from the evidence that in leaping from the train he acted recklessly, carelessly, or negligently, and thereby contributed to his injury. When the plaintiff found the cars in motion, it was his right to demand of the officers or managers of the same to stop the train, and if he had been carried from his home or place of business he could have recovered compensation for returning and all damages that he may have sustained on account of being carried from his home and business, but he had no right to endanger his life or limbs by jumping from the cars, in order to prevent being carried from his home, when he found the cars in motion, and if it appears that he did so jump, and that the injuries complained of were the result thereof, you will find for the defendant, and so say by your verdict."

Appellant's requested charge No. 4: "In this case you are further charged, if you find and believe from the evidence that the plaintiff went on the defendant's train at Gordon for the purpose of looking for some suspected burglars, and thereafter decided to get off said train, and that at the time that he got off of said train said train was moving at a rapid rate of speed, or such rate of speed as to make it dangerous for the plaintiff to alight from said train while in motion, and that at the time plaintiff got off of said train he knew said train was moving at such a rate of speed as to make it dangerous for him to alight therefrom, and that at the time plaintiff alighted from said train he knew it was dangerous for him to get off said train, then you will find for the defendant, and so say by your verdict."

[5-7] We think the requested instruction first quoted was objectionable because argumentative. If the defendant wrongfully and negligently placed plaintiff in a perilous position, and he, under the influence of sudden fright by reason thereof, jumped from the train, defendant could not urge as a defense that in alighting he was guilty of contributory negligence barring a recovery. The evidence tended to show such facts; and hence both the requested instructions were erroneous in ignoring this issue. Besides, the instruction given and quoted above correctly presented the contention sought to be submitted in the requested instructions.

We are of opinion, further, that the evidence was ample to support the charge of negligence made against the defendant, and that there is no conclusive showing that plaintiff was himself guilty of negligence proximately contributing to his injury, contrary to the contentions presented in the two last assignments of error.

The judgment is affirmed.